**KILPATRICK TOWNSEND & STOCKTON LLP**
Bryan J. Wolin (Bar No. 5095062)
3 Times Square
New York, NY 10036
(212) 775-8700
BWolin@ktslaw.com

Caroline Y. Barbee (*pro hac vice* forthcoming)
1801 Century Park East Suite 2300
Los Angeles, CA 90067
(310) 248-3830
CBarbee@ktslaw.com

Bethany R. Nelson (*pro hac vice* forthcoming)
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
BRNelson@ktslaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIC CORPORATION and BIC USA INC., <br><br>     *Plaintiffs*, <br><br>     v. <br><br> LEV TRADING, LLC D/B/A GABRIEL BROTHERS TRADING INC.; GABRIEL BROTHERS TRADING INC. D/B/A/ LEV TRADING; SIMON KHALLOUF; EILY KHALLOUF; JOHN DOE COMPANIES 1-10; AND JANE OR JOHN DOES 1-10, <br><br>     *Defendants*. | CIVIL ACTION NO.: <br><br> **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiffs BIC Corporation and BIC USA Inc. (collectively, "BIC"), by and through their

attorneys, state as follows for their Complaint against Defendants Lev Trading, LLC d/b/a

Gabriel Brothers Trading Inc.; Gabriel Brothers Trading Inc. d/b/a Lev Trading; individually; Simon Khallouf, individually; Eily Khallouf, individually; John Doe Companies 1-10; and Jane or John Does 1-10 (collectively, "Defendants").

## NATURE OF THE ACTION

1.      Defendant Simon Khallouf, as CEO of Defendant Lev Trading, LLC d/b/a Gabriel Brothers Trading Inc. and CEO of Defendant Gabriel Brothers Trading Inc. d/b/a Lev Trading, and Defendant Eily Khallouf, as President and Owner of Gabriel Brothers Trading Inc. d/b/a Lev Trading, on information and belief, with a network of other wholesale entities, have been repeatedly advertising, distributing, and selling large quantities of gray market BIC pocket lighters. Defendants have at least two warehouse and distribution centers where they store, sell, and facilitate the shipment of substantial amounts of gray market BIC pocket lighters within and beyond the State of New York.

2.      To uncover the extent of Defendants' operation, BIC engaged investigators to make a test purchase from Defendants Lev Trading and Gabriel Brothers Trading (collectively, the "Lev Trading Defendants") in connection with which the investigators purchased thousands of lighters bearing what appeared to be BIC's federally registered, incontestable trademarks and trade dress. Expert analysis, however, established that the thousands of lighters purchased from the Lev Trading Defendants were unauthorized (gray market) pocket lighters that the Lev Trading Defendants were passing off as genuine BIC products authorized for sale in the United States. BIC then had its investigators deliver a cease-and-desist letter to the Lev Trading Defendants. Despite receiving the cease-and-desist letter, BIC investigators thereafter discovered that the Lev Trading Defendants were continuing to promote, offer, and sell unauthorized (gray

market) pocket lighters that the Lev Trading Defendants were passing off as genuine BIC products authorized for sale in the United States.

3.     Having determined that Defendants are consistently and pervasively distributing genuine BIC pocket lighters within the United States that are solely intended for sale outside of the United States, and which have material differences from lighters intended for sale in the United States ("Diverted Gray Pocket Lighters"), BIC brings this action to end Defendants' illicit trade in these lighters.

4.     Defendants have willfully and knowingly advertised, offered, sold, and distributed Diverted Gray Pocket Lighters in the United States, including in the State of New York.

5.     For safety reasons, lighters sold to consumers are highly regulated products in the United States.

6.     Because BIC takes consumer safety extremely seriously, it tailors its lighters, associated labeling, and distribution channels for the United States to meet all relevant United States government and regulatory requirements. The same is not true for the lighters Defendants sell because they are not intended for sale within the United States.

7.     Defendants' sale of Diverted Gray Pocket Lighters in the United States, including in the State of New York, bypasses BIC's quality control and/or compliance efforts and thus presents a safety hazard to the consuming public of the United States.

8.     Based on the foregoing, BIC brings this action for trademark infringement and contributory trademark infringement under Sections 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C.

§ 1125(c); trademark dilution and injury to business reputation under N.Y. Gen. Bus. L. § 360-l; and trademark infringement and unfair competition under the common law of New York.

## PARTIES

9.      Plaintiff BIC Corporation is a Connecticut corporation, having its principal place of business in Shelton, Connecticut.

10.      Plaintiff BIC USA Inc. ("BIC USA"), a wholly owned subsidiary of BIC Corporation, is a Delaware corporation, having its principal place of business in Shelton, Connecticut.

11.      On information and belief, Defendant Lev Trading, LLC d/b/a Gabriel Brothers Trading Inc. is a New York limited liability company having its principal place of business at 752 Crawford Ave. Brooklyn, New York 11223-5548.

12.      On information and belief, Defendant Simon Khallouf is the CEO of Defendant Lev Trading and is a resident of the State of New York, and was and is the moving, active, conscious force behind the unlawful acts alleged herein.

13.      On information and belief, Defendant Simon Khallouf directs and controls the operations and actions of Defendant Lev Trading or otherwise authorized, directed, or substantially participated in the unlawful activity described in this Complaint.

14.      On information and belief, Defendant Gabriel Brothers Trading Inc. d/b/a Lev Trading is a New York company having its principal place of business at 752 Crawford Ave. Brooklyn, New York 11223-5548.

15.      On information and belief, Defendant Gabriel Brothers Trading's President (and Owner) is Eily Khallouf and CEO is Simon Khallouf who are residents of the State of New

York, and were and are the moving, active, conscious forces behind the unlawful acts alleged herein.

16.     On information and belief, Defendants Simon Khallouf and Eily Khallouf direct and control the operations and actions of Defendant Gabriel Brothers Trading or otherwise authorized, directed, or substantially participated in the unlawful activity described in this Complaint.

17.     The Lev Trading Defendants list each other as their assumed name, which is reflected in their New York Department of State corporate filings. In addition to using each other's names as their assumed name, the Lev Trading Defendants and Defendants Simon Khallouf and Eily Khallouf are connected to various related and overlapping businesses and addresses as detailed herein.

18.     The Lev Trading Defendants operate wholesale warehouse and distribution centers in North Brunswick, New Jersey (located at 1202 Airport Road North Brunswick, New Jersey 08902-1748) and Trenton, New Jersey (located at 300 3rd Street St Trenton, New Jersey 08611-3305) selling convenience store products to retailers, including Diverted Gray Pocket Lighters, which those retailers in turn sell to consumers.

19.     Defendant Simon Khallouf has a residential address located at 58 Parkway Ct., Brooklyn, New York 11235-6113.

20.     Defendant Eily Khallouf has a residential address located at 752 Crawford Ave. Apt. 1, Brooklyn, New York 11223-5531.

21.     In addition to the warehouse and distribution centers, upon information and belief, Defendants also advertise, sell, and offer for sale their goods online (through their website

https://www.levtradingllc.com/) across the United States, including throughout the State of New York.

22.     BIC is currently unaware of the true names and identities of Defendants John Doe Companies 1-10 and Jane or John Does 1-10 but is informed and believes that such entities and persons have conspired with Defendants and are liable for the violations alleged in this Complaint. Thus, BIC may seek leave to amend this Complaint at an appropriate time to add specific information regarding Doe Defendants on determination of their true identities.

## JURISDICTION AND VENUE

23.     This is a civil action arising from Defendants' use of BIC's trademarks and trade dress on unauthorized (gray market) pocket lighters. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the laws of the State of New York.

24.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction under 28 U.S.C. § 1367(a) of claims under New York law.

25.     On information and belief, the Lev Trading Defendants and Defendants Simon Khallouf and Eily Khallouf reside in this District and advertise, offer for sale, sell, and distribute Diverted Gray Pocket Lighters within the State of New York and this District, which has resulted in a likelihood of customer confusion in New York, including in this District, and has caused irreparable harm to BIC. Thus, the Lev Trading Defendants and Defendants Simon Khallouf and Eily Khallouf have established contacts with the State of New York sufficient for this Court to exercise personal jurisdiction over them.

26.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Lev Trading Defendants and Defendants Simon Khallouf and Eily Khallouf reside in this

District, may be found in this District, and/or a substantial part of the events giving rise to the claims asserted in this Complaint occurred within this District.

<b><u>FACTS COMMON TO ALL CAUSES OF ACTION</u></b>

<b><u>BIC's Famous Trademarks</u></b>

27.     BIC manufactures and distributes high quality and reliable consumer products, including pocket lighters ("BIC Pocket Lighters"), in the United States and around the world, including within this District.

28.     Perhaps the most popular disposable, non-refillable pocket lighter BIC manufactures and sells to consumers is its "Maxi" pocket lighter, representative images of which are shown below.







29.     Another popular disposable, non-refillable pocket lighter BIC manufactures and sells to consumers is its "Mini" pocket lighter—a smaller version of its Maxi pocket lighter, as shown below.







30.    For over 50 years, BIC has used various trademarks and source-identifying product designs (i.e., trade dress) to indicate the origin of its pocket lighters, including the following trademarks and trade dress registered with the United States Patent and Trademark Office ("USPTO"), which are collectively referred to as the "BIC Marks":

| Registration No. | Registered Trademark | Goods | First Use in Commerce |
|---|---|---|---|
| U.S. Reg. No. 2324480 | BIC | Class 34: *cigarette and cigar lighters not of precious metals* | Oct. 5, 1971 |
| U.S. Reg. No. 951661 | BIC | Class 34: *cigarette lighters and refills therefor* | Oct. 5, 1971 |
| U.S. Reg. No. 1761622 | | Class 34: *cigarette lighters not made of precious metal* | Oct. 25, 1973 |
| U.S. Reg. No. 2278917 | | Class 34: *cigarette lighters not made of precious metal* | Feb. 1995 |

31.     The foregoing registrations are collectively referred to as the "BIC Registrations."

32.     BIC Corporation filed a declaration with the USPTO under 15 U.S.C. § 1065, with respect to each of the foregoing trademark registrations, which the USPTO accepted. Each of the BIC registrations is incontestable.

33.     Because each of these registrations is incontestable, they serve as conclusive evidence of the validity of the BIC Marks, BIC Corporation's ownership of the BIC Marks, and BIC's exclusive right to use each of the registered BIC Marks in commerce in connection with the goods identified therein.

34.     True and accurate copies of the USPTO registration certificates for each of the BIC Registrations are attached as **Exhibit 1** and proof of incontestability for each BIC Registration is attached as **Exhibit 2**.

35.     BIC Corporation is the owner of the BIC Marks in the United States, and BIC Corporation exclusively licenses the BIC Marks to BIC USA.

36.     Through BIC's continuous and substantially exclusive use over the span of decades, as well as through BIC's expenditure of tens of millions of dollars in promotion and advertising of the BIC Marks, the BIC Marks are recognized as indicators of source for BIC's high-quality and pioneering lighters and embody the substantial and valuable goodwill associated with BIC Pocket Lighters. Consumers recognize and seek out pocket lighters bearing the BIC Marks.

37.     BIC popularized its first pocket lighters in the 1970s with the "Flick your BIC" advertising campaign and saw its lighters quickly become a household staple—and household name—throughout the world.

38.     Indeed, BIC is the number one seller of pocket lighters in the United States, and BIC Pocket Lighters have become the most recognized lighters in the world, with more than 30 billion lighters sold in over 160 countries.

39.     Social media pages for BIC Pocket Lighters draw substantial attention from the public, with over 1.3 million Facebook users and over 132,000 Instagram users following BIC's online promotion of pocket lighters bearing the BIC Marks.

40.     BIC Pocket Lighters are recognized icons of modern design—residing in the permanent collections of the Museum of Modern Art (MoMA) in New York and the Musee national d'art moderne/Centre de creation industrielle-Centre Georges Pompidou in Paris.

41.     As a result of BIC's substantial efforts, and prior to the acts of Defendants alleged herein, the distinctive BIC Marks have become famous in the minds of consumers and serve to immediately identify BIC as the source of BIC-brand pocket lighters.

### BIC's Reputation and Commitment to Safety

42.     BIC has been providing safe, reliable, non-refillable pocket lighters to millions of Americans for over 50 years.

43.     BIC Pocket Lighters are recognized as setting the standard for quality, safety, and performance for disposable lighters.

44.     BIC's superior commitment to consumer safety begins well before a consumer first picks up a BIC Pocket Lighter.

45.     BIC Pocket Lighters meet or exceed all applicable industry safety standards, and BIC Pocket Lighters that are intended for sale in the United States meet or exceed all U.S. federal laws and regulations established for disposable pocket lighters.

46.     Every one of the approximately 6 million lighters BIC produces worldwide each day undergoes more than 50 automated quality and safety checks during the manufacturing process.

47.     BIC Pocket Lighters (i.e., those manufactured for and sold in the U.S. market) contain various safety features, including a child-resistant safety guard.

48.     BIC Pocket Lighters are routinely drop tested from a height of approximately 10 feet or more.

49.     BIC's automated manufacturing process for its BIC Pocket Lighters ensures the liquid portion of fuel in the lighter does not exceed predetermined levels of the fuel reservoir capacity, to allow for some expansion within the body of the lighter.

50.     BIC Pocket Lighters are routinely tested to withstand at least 149°F for 4 hours.

51.     BIC's commitment to consumer safety continues when a consumer purchases or uses a BIC Pocket Lighter.

52.     The Maxi BIC Pocket Lighter packaging is shown below and features a prominent safety warning: "KEEP AWAY FROM CHILDREN: READ ALL WARNINGS BEFORE USING LIGHTER."



53.    The Mini BIC Pocket Lighter packaging is shown below and carries identical warnings on its packaging.



54.    BIC Pocket Lighters also carry specific warning language compliant with ASTM[1] F400 standards on the lighter itself.

55.    It is clear that pocket lighter safety serves a substantial public benefit in keeping families safe.

56.    Unfortunately, Diverted Gray Pocket Lighters that are intended for markets abroad and do not comply with U.S. regulatory requirements are being imported into the United States (without authorization by BIC) and are advertised, distributed, and sold as genuine authorized BIC branded lighters. Defendants are a prime example of this behavior, which threatens the BIC brand.

**Defendants' Sale of Diverted Gray Pocket Lighters**

57.    Defendants are established players in the wholesale goods (and retail) market that commonly facilitate high-volume sourcing, buying, selling, and shipping transactions, such that they are likely well-versed in how to attain genuine goods—or conversely, to acquire less expensive gray goods intentionally or at least with willful ignorance.

---

[1] "ASTM" means American Society for Testing and Materials International.

58.     Defendant Simon Khallouf, who, in part, owns Defendant Lev Trading, is also connected to other businesses, including Tradewind International Corp., Starken Corp., Blue Island Fashion, and Tradewind International located at 80 Brighton CT Brooklyn, New York 11235-6204, and Gitano Couture Inc. with a registered office at 45 John St. RM 711 New York, NY 10038-3743.

59.     Defendant Eily Khallouf, who, in part, owns Defendant Lev Trading, is also connected to other businesses, including Babytown Inc. located at 64 Brighton Ct., Brooklyn, New York 11235-6204, Baby Town Inc. located at 121 W 37th St., New York, New York 10018-7480, and BabyTown Incorporated located at 1407 Broadway RM 1614, New York, New York 10018-2887. Upon information and belief, the 64 Brighton Ct., Brooklyn, New York 11235-6204 was a former residential address for Defendants Eily Khallouf and Simon Khallouf.

60.     Defendants not only offer BIC-branded goods for sale from their warehouse and distribution centers, but also through their website online at https://www.levtradingllc.com/, a screenshot of which is below showing BIC-branded pocket lighters for sale.



61.     Investigators retained by BIC ("BIC Investigators") conducted an investigation into Defendants' business and goods offered for sale under the BIC Marks.

62.    In late 2024, a BIC Investigator visited one of the Lev Trading Defendants' wholesale warehouse and distribution centers located at 1202 Airport Road North Brunswick, New Jersey 08902-1748.

63.    Upon arrival, the BIC Investigator approached a set of doors marked with the company name. The set of doors also had notes on it advising "NO ADMITTANCE except to employees on duty" as well as a set of phone numbers to call. The BIC Investigator called the first listed number for "Mosche" and was advised by a male that someone would meet him at the door.

64.    After the BIC Investigator's phone call, a woman met the BIC Investigator and led him inside the wholesale warehouse and distribution center to an office area. Inside the office area, the manager "Mosche" arrived and the BIC Investigator delivered and explained BIC's cease-and-desist letter, which noted that, the Lev Trading Defendants were carrying and offering for sale BIC-branded pocket lighters intended for sale outside of the United States, which constitutes trademark infringement, false advertising, and dilution under Sections 32, 43(a), and 43(c) of the Lanham Act and various related state laws.

65.    "Mosche" initialed each page of the cease-and-desist letter and agreed to forward the letter to the Lev Trading Defendants' primary office in Brooklyn, New York and refused to confirm or deny any stock of BIC lighter products.

66.    On information and belief, after BIC delivered the cease-and-desist letter (either in late 2024 or early 2025), Defendants sold and delivered a suspiciously large quantity of Diverted Gray Pocket Lighters to a third-party wholesaler to which (prior to BIC delivering its cease-and-desist letter) Defendants were already previously selling and delivering Diverted Gray Pocket Lighters.

67.     Around the same time, BIC Investigators attempted to purchase BIC-branded pocket lighters from the Lev Trading Defendants via email and the Lev Trading Defendants' online portal and were told Defendants no longer sell BIC pocket lighters.

68.     Two months later, in spring 2025, BIC Investigators attended the ASD Trade Show in Las Vegas, Nevada, a wholesale retail merchandise show, and visited the Lev Trading Defendants' booth. At the booth, BIC Investigators spoke with Defendant Eily Khallouf who told BIC Investigators that Defendants had Diverted Gray Pocket Lighters for sale.

69.     A little over two weeks after the BIC Investigators' visit to Defendants' trade show booth, BIC Investigators conducted an investigative purchase[2] of 8 cases of Maxi lighters (12 trays with 50 lighters per tray) a case and 5 cases of Mini lighters (12 trays with 50 lighters per tray) that were advertised and offered for sale by the Lev Trading Defendants as cases of authentic BIC pocket lighters.

70.     Shortly thereafter, the Lev Trading Defendants sent, from their warehouse and distribution center located at 300 3rd St., Trenton, New Jersey 08611, the 8 purchased cases of Maxi lighters and 5 purchased cases (as a pallet) of Mini lighters to BIC Investigators.

71.     The BIC Investigators analyzed the lighters purchased from the investigative purchase and determined that all 8 cases of Maxi lighters and 5 cases of Mini lighters consisted of Diverted Gray Pocket Lighters.

72.     The packaging of the lighters purchased from the Lev Trading Defendants that contained Diverted Gray Pocket Lighters featured the word mark "BIC" and stylized mark

🔥**BIC** .

---

[2] The order confirmation for the second investigative purchase lists "LEV TRADING LLC" and an address located at 752 Crawford Ave. Brooklyn, New York 11223. Upon information and belief, this address was Defendants Simon and Eily Khallouf's residential addresses.

73.     Each Diverted Gray Pocket Lighter incorporated the word mark "BIC," the stylized mark  *BIC* , and the BIC trade dress.

74.     While they are genuine BIC-brand products, the Diverted Gray Pocket Lighters were never approved, authorized, or intended for sale in the United States because they were produced to meet standards in foreign markets rather than those required by the Consumer Product Safety Commission for disposable lighters sold in the United States.

75.     On information and belief, Defendants sold Diverted Gray Pocket Lighters to third parties in the United States, including Doe Defendants in this District, with the intent that those third parties would resell the Diverted Gray Pocket Lighters to consumers.

<u>**Defendants' Wrongful Acts Have Harmed the Public and BIC**</u>

76.     Previously, and on information and belief, up to the present time, Defendants have advertised, offered for sale, sold, and distributed lighters in the United States, and specifically within the State of New York, that make unauthorized use of the BIC Marks and are not intended to be sold in the United States, i.e., the Diverted Gray Pocket Lighters.

77.     BIC has taken legal action to prevent the importation of gray market lighters into the United States, including obtaining a General Exclusion Order ("GEO") from the International Trade Commission that bars the unlicensed importation into the United States of all lighters that bear the BIC Marks. A true and accurate copy of the GEO is attached as **Exhibit 3**.

78.     BIC has also taken other legal action to stop the unauthorized and unlawful importation and sale of illicit lighters in the past to prevent the harm caused to both BIC and consumers, including in the State of New York. *BIC Corp. v. Nishi Wholesale LLC*, Case No. 6:24-cv-02147-GAP-NWH (M.D. Fla. Nov. 22, 2024); *BIC Corp. v. LAX Distrib. LLC*, Case No. 2:24-cv-09898-SPG-PVC (C.D. Cal. Nov. 15, 2024); *BIC Corp. v. Wholesale Outlet, Inc.*, Case

No. 1:24-cv-00201-JPB (N.D. Ga. Jan. 16, 2024); *BIC Corp. v. Panhandle Wholesale*, Case No. 8:23-cv-2905-SDM-AEP (M.D. Fla. Dec. 19, 2023); *Certain Pocket Lighters*, Inv. No. 337-TA-1142, USITC 714450 (July 13, 2020) (Comm'n Decision); *BIC Corp. v. Arrow Lighter, Inc.*, Case No. 1:18-cv-06922-DLI-PK (E.D.N.Y. Dec. 5, 2018); *BIC Corp. v. Chicago Imp. Inc.*, Case No. 1:18-cv-07378 (N.D. Ill. Nov. 6, 2018); *BIC Corp. v. Florida Distribs., Inc.*, Case No. 0:18-cv-60010-RKA (S.D. Fla. Jan. 3, 2018).

79.     Despite the GEO, on information and belief, Defendants are trading in Diverted Gray Pocket Lighters imported into the United States through a sophisticated network of importers without authorization from BIC and using means targeted at evading detection and confiscation.

80.     On information and belief, Defendants are in possession of additional stock of Diverted Gray Pocket Lighters and intend to imminently sell these lighters in interstate commerce.

81.     On information and belief, Defendants have engaged in these acts with knowledge of BIC's rights and willful intent to violate those rights.

82.     As repeat sellers of Diverted Gray Pocket Lighters on such a vast scale, and given Defendants' continued sale of Diverted Gray Pocket Lighters after receiving a cease-and-desist letter from BIC, Defendants knowingly engaged in violations of the Lanham Act, as well as other federal laws and regulations and various state laws.

83.     Upon information and belief, Defendants know that their Diverted Gray Pocket Lighters cannot legally be sold in the United States.

84.     On information and belief, John Doe Companies 1-10 and John or Jane Does 1-10 have conspired with Defendants to carry out the wrongful conduct alleged herein.

85.     Defendants' unlawful actions are having, and will continue to have, a substantial and adverse effect on United States commerce.

86.     Defendants' wrongful acts and/or willful infringements have caused, and will continue to cause, irreparable harm to BIC, for which BIC has no adequate remedy at law, unless permanently enjoined.

87.     Defendants are profiting, and will continue to profit, from their unlawful actions.

88.     Defendants' actions are causing, and will continue to cause, BIC monetary damage in amounts presently unknown but to be determined at trial.

89.     Moreover, it is of particular concern that the Diverted Gray Pocket Lighters that Defendants sell do not conform to BIC's standard United States quality control measures or United States safety standards.

90.     The Diverted Gray Pocket Lighters are manufactured to meet regulatory standards in foreign markets and are not approved, authorized, or intended for sale in the United States.

91.     Customers are likely to be confused and to mistakenly attribute material differences of the Diverted Gray Pocket Lighters to BIC. By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to BIC's goodwill and reputation.

## COUNT ONE
### Federal Trademark Infringement
### in Violation of Lanham Act § 32(1)
### (15 U.S.C. § 1114)

92.     BIC repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

93. BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous.

94. Defendants have not been granted any right to use the BIC Marks in the United States.

95. In connection with Diverted Gray Pocket Lighters, Defendants have made unauthorized use in commerce of marks that are identical to the BIC Marks by selling genuine BIC Pocket Lighters that have material differences from those lighters BIC intends for sale in the United States, which is likely to cause consumer confusion.

96. Defendants' actions have caused and/or are likely to cause confusion, deception, or mistake as to the source or sponsorship of Defendants' Diverted Gray Pocket Lighters, and are likely to deceive the public into believing that the Diverted Gray Pocket Lighters emanate from BIC, are sponsored, endorsed, or approved by BIC for sale in the United States, or are otherwise associated with BIC in the United States.

97. On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights.

98. Defendants have intentionally, willfully, knowingly, and maliciously used confusingly similar versions of the BIC Marks in connection with the advertising, sale, offering for sale, and distribution of Diverted Gray Pocket Lighters to trade on the goodwill associated with the federally registered BIC Marks, to BIC's great and irreparable injury.

99. Defendants are liable for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

100.    BIC has no adequate remedy at law for Defendants' wrongful conduct, which has caused, and, unless permanently enjoined, will continue to cause a likelihood of confusion and deception to members of the public and, additionally, injury to BIC's goodwill and reputation as symbolized by the federally registered BIC Marks.

101.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief and to recover Defendants' profits, BIC's actual damages (or alternatively, statutory damages, including enhanced statutory damages), enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

102.    Additionally, pursuant to 15 U.S.C. § 1117(b), BIC is entitled to trebling of the greater of profits or damages, and to prejudgment interest.

103.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

### COUNT TWO
**Federal Unfair Competition and False Designation of Origin
in Violation of Lanham Act § 43(a)
(15 U.S.C. § 1125(a))**

104.    BIC repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

105.    BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous.

106.    Defendants have not been granted any right to use the BIC Marks in the United States.

107.    In connection with Diverted Gray Pocket Lighters, Defendants have made unauthorized use in commerce of marks that are identical to the BIC Marks by selling genuine BIC Pocket Lighters that have material differences from those lighters BIC intends for sale in the United States, which is likely to cause consumer confusion.

108.    Defendants' actions have caused and/or are likely to cause confusion, deception, or mistake as to the source, sponsorship, or affiliation of Defendants' Diverted Gray Pocket Lighters, and are likely to deceive the public into believing that the Diverted Gray Pocket Lighters emanate from BIC, are sponsored, endorsed, or approved by BIC, or are otherwise associated with BIC in the United States.

109.    On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights.

110.    Defendants have intentionally, willfully, knowingly, and maliciously used confusingly similar versions of the BIC Marks in connection with the advertising, sale, offering for sale, and distribution of Diverted Gray Pocket Lighters to trade on the goodwill associated with the federally registered BIC Marks, to BIC's great and irreparable injury.

111.    Defendants are liable for unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

112.    BIC has no adequate remedy at law for Defendants' wrongful conduct, which has caused, and, unless permanently enjoined, will continue to cause a likelihood of confusion and deception to members of the public and, additionally, injury to BIC's goodwill and reputation as symbolized by the federally registered BIC Marks.

113.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief and to recover Defendants' profits, BIC's actual damages, enhanced

profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

114.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

**COUNT THREE**
**Contributory Trademark Infringement**
**in Violation of Lanham Act § 32(1)**
**(15 U.S.C. § 1114(1))**

115.    BIC repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

116.    BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous.

117.    Defendants have sold and offered for sale Diverted Gray Pocket Lighters bearing marks that are the same as, or are confusingly similar to, the BIC Marks, with the knowledge, expectation, or intention that downstream retailers and distributors of Defendants' Diverted Gray Pocket Lighters would use the BIC Marks in connection with the sale of lighters.

118.    Defendants and their retailer and distributor customers have not been granted any right to use the BIC Marks in the United States.

119.    The unauthorized use of the BIC Marks in commerce by retailers and distributors supplied by Defendants has caused and/or is likely to cause confusion or mistake or is likely to deceive regarding the source, sponsorship, approval, and/or affiliation of the goods imported, offered, and sold by retailers and distributors supplied by Defendants.

120.    On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights.

121.    Defendants have intentionally induced, contributed to, or knowingly participated in the infringement of BIC's rights in the BIC Marks by Defendants' retailer and distributor customers.

122.    Defendants have profited from the infringement of BIC's rights in the BIC Marks by Defendants and by Defendants' retailer and distributor customers.

123.    Defendants are liable for contributory trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

124.    Defendants' wrongful conduct and/or willful contributory infringement, for which BIC has no adequate remedy at law, has caused and, unless permanently enjoined, will continue to damage and cause irreparable harm to BIC.

125.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief and to recover Defendants' profits, BIC's actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

126.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

**COUNT FOUR**
**Federal Dilution**
**in Violation of Lanham Act § 43(c)**
**(15 U.S.C. § 1125(c))**

127.    BIC repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

128.    BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous.

129.    Defendants have not been granted any right to use the BIC Marks in the United States.

130.    In connection with Diverted Gray Pocket Lighters, Defendants have made unauthorized use in commerce of marks that are the same as, or are confusingly similar to, the BIC Marks.

131.    For more than 50 years, BIC has exclusively and continuously promoted and used the BIC Marks in connection with pocket lighters throughout the United States.

132.    As a result, and well prior to Defendants' unlawful actions, the BIC Marks were inherently distinctive or acquired distinctiveness with secondary meaning, and became well known and famous, and identify BIC as the source of high quality and safe BIC-brand pocket lighters.

133.    Defendants' use of the famous BIC Marks in connection with the sale of Diverted Gray Pocket Lighters dilutes or is likely to dilute the distinctiveness of the BIC Marks by eroding the public's exclusive identification of the BIC Marks with BIC, tarnishing and degrading the positive association and prestigious connotations of the BIC Marks, and otherwise lessening the capacity of the BIC Marks to identify and distinguish BIC's goods.

134.    On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights.

135.    Defendants' actions demonstrate a willful intent to trade on the goodwill associated with the BIC Marks or to cause dilution of the BIC Marks to BIC's great and irreparable injury.

136.    Defendants are liable for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

137.    Defendants' wrongful conduct and/or willful dilution, for which BIC has no adequate remedy at law, has caused and, unless permanently enjoined, will continue to cause injury to the public and damage and irreparable harm to BIC.

138.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief and to Defendants' profits, BIC's actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116 and 1117.

139.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

## COUNT FIVE
### New York State Trademark Dilution; Injury to Business Reputation
### (N.Y. Gen. Bus. L. § 360-l)

140.    BIC repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

141.    BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous, including in the State of New York.

142.    Defendants have not been granted any right to use the BIC Marks in the United States, including in the State of New York.

143.    In connection with Diverted Gray Pocket Lighters, Defendants have made unauthorized use in commerce of marks that are the same as, or are confusingly similar to, the BIC Marks.

144.    For more than 50 years, BIC has exclusively and continuously promoted and used the BIC Marks in connection with pocket lighters throughout the United States, including in the State of New York.

145.    As a result, and well prior to Defendants' unlawful actions, the BIC Marks were inherently distinctive or acquired distinctiveness with secondary meaning, and became well known and famous, and identify BIC as the source of high quality and safe BIC-brand pocket lighters in the United States and in the State of New York.

146.    Defendants' use of the famous BIC Marks in connection with the sale of Diverted Gray Pocket Lighters dilutes or is likely to dilute the distinctiveness of the BIC Marks by eroding the public's exclusive identification of the BIC Marks with BIC, tarnishing and degrading the positive association and prestigious connotations of the BIC Marks, and otherwise lessening the capacity of the BIC Marks to identify and distinguish BIC's goods.

147.    On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights.

148.    Defendants' actions demonstrate a willful intent to trade on the goodwill associated with the BIC Marks or to cause dilution of the BIC Marks to the great and irreparable injury to BIC.

149.    Defendants' wrongful conduct and/or willful dilution, for which BIC has no adequate remedy at law, has caused and, unless permanently enjoined, will continue to cause injury to the public and damage and irreparable harm to BIC.

150.    Defendants' actions constitute a violation of N.Y. Gen. Bus. Law § 360-l.

151.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief.

152.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

**COUNT SIX**
**Common Law Trademark Infringement and Unfair Competition**

153.    BIC repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

154.    BIC Corporation is the owner and registrant of the BIC Marks, and BIC USA is the exclusive licensee of the BIC Marks in the United States, where consumers perceive the BIC Marks as distinctive, well known, and famous.

155.    Defendants have not been granted any right to use the BIC Marks in the United States, including in the State of New York.

156.    In connection with the Diverted Gray Pocket Lighters, Defendants have made unauthorized use in commerce of marks that are identical to the BIC Marks by selling genuine BIC Pocket Lighters that have material differences from those lighters BIC intends for sale in the United States, which is likely to cause consumer confusion.

157.    Defendants' actions have caused and/or are likely to cause confusion, deception, or mistake as to the source, sponsorship, and/or affiliation of the Diverted Gray Pocket Lighters imported, offered for sale, and/or sold by Defendants.

158.    On information and belief, Defendants' wrongful conduct was undertaken and/or continued with full knowledge of BIC's rights and, thus, constitutes willful infringement.

159.    Defendants' unlawful activities constitute willful trademark infringement and unfair competition in violation of the common law of the State of New York.

160.    As a direct and proximate result of Defendants' violations of the common laws of the State of New York, BIC has been, and will continue to be, damaged in an amount to be determined at trial.

161.    BIC has no adequate remedy at law for Defendants' wrongful conduct, which has caused, and, unless permanently enjoined, will continue to cause damage and irreparable harm to BIC.

162.    Defendants' acts show willful misconduct, malice, fraud, wantonness, oppression, or entire want of care which raises the presumption of conscious indifference to consequences.

163.    Because of Defendants' wrongful conduct, BIC is entitled to preliminary and permanent injunctive relief, and Defendants are liable for compensatory damages, and punitive damages.

164.    Upon information and belief, the Lev Trading Defendants' complained-of actions are at the direction of, and approved by, Defendants Simon Khallouf and Eily Khallouf, who are each individually liable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs BIC Corporation and BIC USA Inc. demand a trial by jury on all issues triable by right to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs BIC Corporation and BIC USA Inc. respectfully request that the Court:

1.    Grant judgment in favor of BIC and against Defendants on all of BIC's claims;

2.      Permanently enjoin and restrain each and every Defendant, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with it, from:

a.      Using any mark or designation that is likely to be confused with the BIC Marks;

b.      Advertising, offering for sale, distributing, or selling any Diverted Gray Pocket Lighters;

c.      Unfairly competing with BIC in the manufacture, importation, advertising, offering for sale, sale, shipment, or distribution of lighters; or

d.      Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

3.      Order each and every Defendant to, at Defendants' expense, withdraw from the market, account for, and properly destroy any and all Diverted Gray Pocket Lighters sold by Defendants;

4.      Order each and every Defendant, pursuant to 15 U.S.C. § 1116, to serve on BIC within thirty (30) days after service on Defendant of any final permanent injunctive orders, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

5.      Order each and every Defendant to account for, and pay over to BIC, Defendants' profits and all damages sustained by BIC;

6.      Enhance the amount of damages and/or profits awarded to BIC, as provided by law;

7.      Grant BIC statutory damages, in the alternative, if it so chooses;

8.      Award BIC such punitive damages for each and every Defendants' willful and intentional acts of unfair competition and infringement of BIC's rights that the Court shall deem just and proper;

9.      Award BIC the fees, costs, and disbursements, and interest, expended in connection with any actions taken to investigate and confirm the claims made in this Complaint;

10.     Award BIC its reasonable attorney fees', costs, disbursements, and interest, as provided by law; and

11.     Grant such other and further relief as the Court may deem just and proper.

Dated: October 8, 2025

*/s/Bryan J. Wolin*
**KILPATRICK TOWNSEND & STOCKTON LLP**
Bryan J. Wolin (Bar No. 5095062)
3 Times Square
New York, NY 10036
(212) 775-8700
BWolin@ktslaw.com

Caroline Y. Barbee (*pro hac vice* forthcoming)
1801 Century Park E, Suite 2300
Los Angeles, CA 90067
(310) 248-3830
CBarbee@ktslaw.com

Bethany R. Nelson (*pro hac vice* forthcoming)
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6500
BRNelson@ktslaw.com

*Counsel for Plaintiffs BIC Corporation and BIC USA Inc.*